J. William HAYDEN, Plaintiff–Appellant,

v.

LA–Z–BOY CHAIR COMPANY, Defendant–Appellee.

No. 92–3863.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1993.

Decided Nov. 3, 1993.

Merl O. Barns, San Francisco, CA (argued), for plaintiff-appellant.

Richard P. Steele, Richard E. Steinbronn, Barnes & Thornburg, Fort Wayne, IN, Richard J. Seryak, Larry J. Saylor (argued), Rocque E. Lipford, Miller, Canfield, Paddock & Stone, Detroit, MI, for defendant-appellee.

Before CUMMINGS, COFFEY, and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

J. William Hayden ("Hayden"), 61 years of age, was an independent sales representative for La–Z–Boy Chair Company ("La–Z–Boy") for twenty-two years. In December 1990 La–Z–Boy decided not to renew Hayden's contract and replaced him with a 44–year–old independent sales representative. Hayden filed suit, alleging that La–Z–Boy's decision not to renew his contract violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The district court granted summary judgment for La–Z–Boy on the grounds that Hayden was not covered by the ADEA.

We affirm.

## I. BACKGROUND

La–Z–Boy is a furniture manufacturer that contracts with independent sales representatives to sell its products to retailers on a straight commission basis. The rights and duties of these sales representatives are spelled out in the one-year "Independent Sales Representative's Agreement" that the sales representatives sign. Pursuant to this

written contract, the parties agreed that 1) Hayden would be responsible for calling on retail furniture stores in certain counties in northern Indiana, Ohio, and Michigan to service established accounts and to establish new accounts; 2) that Hayden was "not an agent or employee" of La–Z–Boy; 3) that either party could terminate the agreement at any time without cause by giving the other party thirty days written notice; and 4) that Hayden could request La–Z–Boy's permission to carry other manufacturers' noncompeting lines of merchandise.

In 1984, Hayden incorporated himself as the sole shareholder and only full-time employee of "J. William Hayden, Inc." Thereafter, La–Z–Boy made Hayden's commission payable to J. William Hayden, Inc., which in turn paid Hayden a salary. In December 1990 La–Z–Boy informed Hayden that it would not be renewing his December 1989 Independent Sales Representative Agreement. The company named Frank Stultz, its 44–year–old West Virginia independent sales representative, to take over Hayden's territory, and Hayden filed this suit under the ADEA.

After the completion of discovery, La–Z–Boy moved the court for summary judgment. The company argued that Hayden was an independent contractor, not an employee, and therefore fell outside the protection of the ADEA, and further argued in the alternative that even if Hayden was covered by the statute, he had failed to create a genuine issue of material fact on the question of whether La–Z–Boy's articulated reasons for refusing to renew his contract were merely a pretext for age discrimination.[1] The trial court granted summary judgment on alternative grounds.

## II. ISSUES

Hayden argues that the trial court erred in finding that he was not covered by the

ADEA and in finding that he had failed to present sufficient evidence to create a genuine issue of material fact. Because we agree with the district court that the plaintiff is not covered by the ADEA, we need not address whether the plaintiff could have demonstrated the existence of a genuine issue of material fact.

## III. DISCUSSION

We review summary judgment orders *de novo*, viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 400 (7th Cir.1992) (citing *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991)). Summary judgment is appropriate only when the materials before the court demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In other words, the record must reveal that "no reasonable jury could find for the non-moving party." *Anderson*, 965 F.2d at 400 (quoting *Karazanos*, 948 F.2d at 335).

In granting summary judgment, the district court reasoned that even if an ADEA plaintiff did not have to show that he was an employee of the organization he was seeking recovery from, he at least had to establish the existence of some protected employment relationship with which the defendant had allegedly interfered. The only employment relationship Hayden sought to establish in district court was his relationship with his own corporation, of which he was the sole shareholder. The court found that the ADEA did not protect Hayden's employment relationship with his own corporation and that he had no other employment relationship with any third party. Therefore, the

1. Among the reasons La–Z–Boy offered for its decision not to renew Hayden's contract were (1) the relatively flat sales in Hayden's territory; (2) Hayden's failure to sell the desired mix of sleepers, sofas and recliner sofas; (3) customer complaints indicating that Hayden rarely called on some of his customers; (4) an investigation by La–Z–Boy's district sales manager, Dwight Dor-

wart, which confirmed that Hayden had a poor relationship with many of his customers and failed to conduct sales meetings with them; and (5) Hayden's failure to submit a plan to correct these problems or even submit a plan to do so despite being placed on three separate six-month periods of probation over the years.

court concluded, Hayden could not recover under the Act as a matter of law.

■  The Age Discrimination in Employment Act provides:

"It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623(a)(1).

The statute thus prohibits an employer from discriminating against its employees on the basis of age, but does not cover independent contractors. *See Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 980 (4th Cir.1983) ("plain reading of the ADEA indicates that an 'individual' only has a cause of action under this provision if he is an 'employee' at the time of his termination"). Although courts have uniformly required that a person seeking to recover under the ADEA be an employee of the same employer he is seeking to recover from, Hayden attempts to furrow new fields of legal theory and argues that a line of Title VII cases provides persuasive authority that the ADEA should be read as permitting an individual (Hayden) to recover for an employer's (La–Z–Boy) interference with the individual's employment relationship with his own corporation (J. William Hayden, Inc.). Here Hayden complains that La–Z–Boy's refusal to renew his Independent Sales Representative Agreement cut off the salary he received from J. William Hayden, Inc.

■  Hayden's theory that the ADEA protects his employment relationship with his own corporation finds no support from our research in either statute or case law. In *EEOC v. Zippo Manufacturing Co.,* 713 F.2d 32 (3rd Cir.1983), for example, Zippo's district sales managers (some of whom had formed corporations in which they were the sole shareholder) worked as independent contractors before being terminated shortly after they turned sixty-five. The Third Cir-

cuit held that "if appellants were not Zippo employees, ADEA is not applicable to their cause and their allegation that Zippo violated ADEA in terminating them because they reached the age of 65 must be rejected." *Id.* at 35.

In *Hickey v. Arkla Industries, Inc.,* 699 F.2d 748 (5th Cir.1983), the plaintiff was a former Arkla "manufacturer's sales representative" who had signed a Manufacturer's Sales Representative Agreement with Arkla that designated him as an independent contractor. The fact that Hickey had established Perry Hickey Enterprises as the corporate vehicle for his sales of Arkla products, and thus presumably could have been found to have had an "employment relationship" with his own corporation, was not enough to bring him within the ADEA. The Fifth Circuit affirmed the district court's order granting Arkla Industries' motion for a directed verdict, holding that "Hickey must be an employee of Arkla in order to have a cause of action under the ADEA." *Id.* at 753.

Hayden nevertheless argues that a broader reading of the ADEA is indicated by a line of cases interpreting the scope of Title VII of the Civil Rights Act of 1964.[2] Title VII provides that:

"(a) It shall be an unlawful employment practice for an employer—

(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e–2(a)(1).

Because Title VII and the ADEA share "a similar purpose—to stamp-out discrimination in various forms—cases construing the definitional provisions of one [statute] are persuasive authority" when interpreting the provisions of the other. *Hyland v. New Haven Radiology Associates, P.C.,* 794 F.2d 793, 796

---

**2.** *See Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973); *Gomez v. Alexian Brothers of San Jose,* 698 F.2d 1019 (9th Cir. 1983); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344 (S.D.N.Y.1984);

*Doe on Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411 (7th Cir.1986); *Mitchell v. Tenney,* 650 F.Supp. 703 (N.D.Ill.1986); *Pardazi v. Cullman Medical Center,* 838 F.2d 1155 (11th Cir.1988). We discuss these opinions *infra.*

(2nd Cir.1986), citing *Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978) ("the prohibitions of the ADEA were derived *in haec verba* from Title VII"); *see also Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577, 581 (7th Cir.1993) (the Title VII standard for determining whether a business relationship is one of employer-employee applies equally to a claim under the ADEA).

Hayden concedes in his brief that "he has never alleged that he was an employee of La–Z–Boy." But he points out that this court has recognized that Title VII applies where an employer "discriminatorily interfer[es] with an individual's employment opportunities with another employer." *Doe on Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411, 422 (7th Cir.1986) (citing *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973)). And he cites a Ninth Circuit case, *Gomez v. Alexian Brothers of San Jose,* 698 F.2d 1019 (9th Cir.1983), for the further proposition that even an individual's "employment" relationship with his own corporation is sufficient to bring him within Title VII.

The plaintiff in *Gomez* was a Hispanic physician who practiced medicine as an employee of a professional corporation. When he alleged that the defendant hospital's refusal to award him a contract naming him the director of the hospital's emergency room violated Title VII, the hospital argued that he lacked standing to assert a Title VII claim because nothing more than an independent contractor relationship had ever been contemplated between the physician and hospital. The Ninth Circuit rejected this argument and allowed the plaintiff's suit to proceed on the basis that Title VII has been interpreted "to encompass situations in which 'a defendant subject to Title VII interferes with an individual's employment opportunities with another employer.'" *Id.* at 1021 (*quoting Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883 n. 3 (9th Cir.1980)).

The court reasoned that Gomez had established his standing to sue under Title VII by alleging that the hospital's discriminatory refusal to contract with him had

"denied him the opportunity to be employed by [his professional corporation] as director of defendant's emergency room. The fact that plaintiff continues as an employee [of his professional corporation] does not mean the employment relationship between [Gomez and his professional corporation] has not been interfered with. The conditions of plaintiff's employment are different than they would have been had he not been discriminated against. Defendants do not dispute that the hospital is an employer under Title VII, nor that plaintiff is an employee [of his professional corporation]."

*Gomez,* 698 F.2d at 1021.

Applying the *Gomez* rationale to this case, Hayden contends, would permit him to sue under Title VII: La–Z–Boy is "an employer" and Hayden is "an employee" of J. William Hayden, Inc. Therefore, Hayden reasons, since Title VII would protect his employment relationship with his own corporation, so should the ADEA.

Initially, we note that we disagree with Hayden's assumption that Title VII standing automatically confers ADEA standing. As the district court noted in its order granting summary judgment, "Although the Seventh Circuit Court of Appeals has held that the language of Title VII is broad and provides protection to persons who are not employees of the employer, the Seventh Circuit has not yet decided whether the ADEA should likewise be given a broad reading." But although the question of whether the ADEA should be interpreted as broadly as Title VII is an important one, it is not before us in the present appeal because a close reading of the cases discloses that, even under Title VII, a plaintiff may not recover on the basis that an employer has interfered with the plaintiff's "employment relationship" with his wholly owned corporation. The Ninth Circuit distinguished *Gomez* on just this basis in *Mitchell v. Frank R. Howard Memorial Hospital,* 853 F.2d 762 (9th Cir.1988), *cert. denied,* 489 U.S. 1013, 109 S.Ct. 1123, 103 L.Ed.2d 186 (1989). The plaintiff in *Mitchell* (a radiologist) sought to assert a Title VII claim against a hospital that had terminated the contract under which he provided the hospital with radiology services. The radiologist cited *Gomez* for the proposition that, by ter-

minating his contract, the hospital ("an employer") had disrupted his "employment relationship" with his wholly owned professional corporation. The Ninth Circuit was not persuaded:

"Dr. Mitchell argues that the hospital interfered with his employment relationship with the professional corporation of which he is the sole shareholder. We reject this argument because we believe that *the relationship between an individual and his wholly owned professional corporation is not an employment relationship that Congress intended to protect under Title VII* .... *Gomez* ... upon which Dr. Mitchell relies, is clearly distinguishable. *Gomez* involved a corporation that employed a number of doctors who rendered medical services as part of the corporation's group medical practice.... In contrast, Dr. Mitchell is both the sole shareholder and the sole employee of his professional corporation."

*Mitchell*, 853 F.2d at 767 (emphasis added).

We agree with the Ninth Circuit that Title VII does not protect an individual's "employment relationship" with his wholly owned corporation. To hold otherwise would mean that an independent contractor with no relevant employment relationships with the defendant (or anyone else) could bring himself within the protection of the ADEA simply by incorporating. In fact, each of the Title VII cases Hayden relies upon is distinguishable on that basis: In each case upholding a plaintiff's right to sue, the persons or entities with whom the plaintiffs were allegedly employed were third parties, not corporations owned wholly by the plaintiffs in the manner that Hayden owns and operates J. William Hayden, Inc. *See Pardazi v. Cullman Medical Center*, 838 F.2d 1155 (11th Cir.1988) (Title VII protects physician's prospective employment with a professional corporation in which another physician was the principal); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 611 F.Supp. 344 (S.D.N.Y.1984) (Title VII protects temporary employee's employment with the temporary agency); *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973) (Title VII protects employment of private duty nurse and physician by third-party patients).

Finally, a close reading of the plaintiff's opening brief reveals, in a single clause in the concluding paragraph of his ADEA standing argument, one—or perhaps two—additional arguments presented for the first time on appeal. The paragraph reads, in its entirety:

"In sum, whether one uses the precise analysis set forth above *or finds that there was an indirect employment relationship here because of appellee's control over appellant's access to customers* [citing *Mitchell v. Tenney*, 650 F.Supp. 703 (N.D.Ill. 1986)], we submit that the broad remedial purposes of ADEA will be best served by declining to invoke the restrictive standard for the assertion of a claim under that statute which the court below imposed."

(Emphasis added.)

Whether by this the plaintiff is attempting to infer that he might be viewed as an "indirect" La–Z–Boy employee, or whether (as his reply brief suggests) he means to imply that he had some kind of protected employment relationship with the furniture dealers on whom he called as an independent sales representative for La–Z–Boy, neither issue has been preserved for our review. "It is well-established that an issue not raised in district court is waived on appeal," *Evans v. Fluor Distribution Cos., Inc.*, 799 F.2d 364, 366 (7th Cir.1986), and a review of Plaintiff's Substituted Brief in Opposition to Summary Judgment discloses that Hayden specifically disavowed making any arguments to the district court on the basis of his alleged "indirect employment" relationships. "We have *not* argued," Hayden advised the court, "though we might with ample justification, that an indirect employment relationship existed between plaintiff and defendant ..." (emphasis added). The trial judge took the plaintiff at his word, stating in his order granting summary judgment that "The only employment relationship present in the case at bar is Hayden's relationship with his corporation, of which he is the sole shareholder."

Having decided not to argue before the district court the issue of whether he might have an "indirect" employment relationship

with either La–Z–Boy or the furniture dealers who purchase La–Z–Boy products, Hayden may not raise that issue for the first time on appeal. *Evans,* 799 F.2d at 366. *See also Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 235 (7th Cir.1991) (issue not raised in motion opposing summary judgment is waived on appeal from grant of summary judgment).

We will note, however, that there is no merit to the plaintiff's arguments in any event because the record makes clear that Hayden was not an indirect employee of either La–Z–Boy or the furniture dealers. In determining whether an employer-employee relationship exists, we look to the following factors:

> "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations."

*Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577, 581 (7th Cir.1993) (citations omitted).

The record discloses that Hayden's relationship to La–Z–Boy was that of an independent contractor. The La–Z–Boy Independent Sales Representative Agreement specifically provided that the representative was "not an employee or agent" of La–Z–Boy. La–Z–Boy paid Hayden (or, after 1985, J. William Hayden, Inc.) a straight commission. The defendant neither provided Hayden with an office nor reimbursed his corporation for travel, office or any other business expense. It did not provide him with insurance coverage, retirement benefits, paid sick or vacation time or other benefits. La–Z–Boy did not withhold any taxes or Social Security payments on the commission payments it made to Hayden or his corporation. Defendant did not tell plaintiff when to call on customers, require him to submit call reports, or otherwise manage the day-to-day operation of his business. Their Indepen-

dent Sales Representative Agreement further specifically provided that either party could terminate the relationship upon thirty days notice, with or without cause. *Mitchell v. Tenney,* 650 F.Supp. 703 (N.D.Ill.1986), the sole case cited by Hayden, is readily distinguishable because the defendant in that case provided the plaintiff commodity salesman with a place of business, offered a group health plan, and closely regulated his working hours. *See Mitchell,* 650 F.Supp. at 705. Thus, under the *Rogers* test cited above, Hayden's relationship to La–Z–Boy was clearly that of an independent contractor, not that of an employee, "indirect" or otherwise.

Of course, Hayden's relationship with the furniture dealers to whom he periodically sought to sell La–Z–Boy products was even less employee-like than his relationship with La–Z–Boy. Hayden conceded in his deposition that he had no actual or prospective contractual relationship with these furniture dealers and that he remains free to sell these same dealers any (non-La–Z–Boy) furniture or other products. Thus, under the *Rogers* criteria, the dealers on whom Hayden called while working as an independent contractor for La–Z–Boy could not in any sense be said to have "employed" him.

Therefore, even if plaintiff had not waived his argument that some type of indirect employment relationship existed between himself and La–Z–Boy or between himself and the furniture dealers, we would agree with the district court's finding that "the only employment relationship present at bar is Hayden's relationship with [J. William Hayden, Inc.] of which he is the sole shareholder."

Whether ADEA coverage should be expanded to include independent contractors who elect to incorporate themselves is a question for Congress, not the courts. *See Hickey,* 699 F.2d at 753.

## IV. CONCLUSION

Because there is no viable ADEA claim in this case, the district court's grant of sum-

mary judgment in favor of La–Z–Boy Chair Company is

AFFIRMED.